**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 18-cv-0251-WJM-NRN
*Consolidated with Civil Action No. 18-cv-0568-WJM-NRN*

ELADIO VILLALOBOS,

    Plaintiff,

v.

VISION GRAPHICS, INC./EAGLE:XM BENEFIT PLAN,
VISION GRAPHICS, INC., and
EAGLE:XM, LLC,

    Defendants.

VISION GRAPHICS, INC., a Wyoming corporation,

    Third-Party Plaintiff,

v.

CYPRESS BENEFIT ADMINISTRATORS (LHS), LLC, a Delaware limited liability company, and
CYPRESS BENEFIT ADMINISTRATORS, LLC, a Delaware limited liability company,

    Third-Party Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART MOTION TO AMEND, AND *SUA SPONTE* GRANTING PARTIAL LEAVE TO AMEND**

Plaintiff Eladio Villalobos ("Villalobos") was severely injured in a motorcycle accident while not wearing a helmet. Allegedly, he learned only after the accident that his employer-sponsored health plan does not cover injuries incurred in motorcycle accidents where the injured person was not wearing a helmet. Villalobos sues:

- his employer, Vision Graphics, Inc. ("Vision"),

- his employer-sponsored health plan, known as the Vision Graphics, Inc./Eagle:xm Benefit Plan ("Plan"), and
- another entity associated with Vision and the Plan, called Eagle:xm, LLC ("Eagle"),[1]

under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, claiming various breaches of duty as to the no-helmet exclusion. Vision has, in turn, asserted third-party claims against two entities allegedly responsible for the formulation and administration of health benefits under the Plan, Cypress Benefit Administrators (LHS), LLC ("Cypress LHS") and Cypress Benefit Administrators, LLC ("Cypress BA"). Broadly speaking, Vision alleges that the two Cypress entities are responsible for creating the problem that led to Villalobos's lawsuit. (ECF No. 15.)

Currently before the Court is Cypress LHS's Motion to Dismiss the Amended Complaint ("Motion to Dismiss"). (ECF No. 43.) Cypress LHS addresses its motion to "the Amended Complaint"—as opposed to any third-party complaint—because, at the time Cypress LHS filed the Motion to Dismiss, the dispute between Vision and the Cypress entities was separate from the dispute between Villalobos, Vision, the Plan, and Eagle. Therefore, Vision was the plaintiff and the Cypress entities were the defendants. The Court has since consolidated the dispute and re-aligned the parties, as reflected in the caption, above. (ECF No. 46.)

Cypress LHS's primary argument in the Motion to Dismiss is a Rule 12(b)(1) argument that the dispute, as originally filed by Vision, is unripe while the at-that-time-separate lawsuit brought by Villalobos remained to be adjudicated. (ECF No. 43-1 at 4–

---

[1] The parties nowhere explain what role Eagle had.

2

6.) One week later, however, the Court issued its consolidation order. (ECF No. 46.) Apparently for this reason, Cypress LHS's reply brief says nothing about an unripe dispute, and focuses entirely on Rule 12(b)(6) arguments asserted alternatively in the Motion to Dismiss. (ECF No. 63.) As to those Rule 12(b)(6) arguments, Vision responded (ECF No. 58) but also filed a Motion for Leave to File Amended Third-Party Complaint ("Motion to Amend") (ECF No. 59), which is also currently before the Court. Vision argues that the Court should deny as moot the Motion to Dismiss if it grants the Motion to Amend. (ECF No. 58 at 2.)

The Court finds that the portion of the Motion to Dismiss claiming that the dispute is unripe is mooted by consolidation. As to the Rule 12(b)(6) arguments, the Court agrees that the Motion to Amend, if granted, moots the Motion to Dismiss. Accordingly, the primary question before the Court is whether to grant the Motion to Amend. For the reasons explained below, the Court finds that it should be granted as to Vision's claims for breach of fiduciary duty, breach of contract, and declaratory judgment. As to its claim for negligence, the Court finds that both the proposed amended version and the currently operative version fail to state a claim, so the Motion to Amend will be denied as to the proposed negligence claim and the Motion to Dismiss will be granted as to the current negligence claim. However, the Court will *sua sponte* grant leave to Vision to include a re-pleaded version of this claim in the amended third-party complaint otherwise authorized by this order.

## I. LEGAL STANDARD

Under Rule 15(a), a court should allow a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a). "[T]he grant or denial of an opportunity to

3

amend is within the discretion" of the Court, but an "outright refusal to grant the leave without any justifying reason" is an abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993).

Cypress LHS primarily argues that amendment would be futile. (ECF No. 62 at 2.)[2] Proposed amendments are futile when the amended complaint "would be subject to dismissal for any reason." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001). "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). Accordingly, the Court will "assume the truth of [Vision's] well-pleaded [proposed] factual allegations and view them in the light most favorable to [Vision]." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

## II. BACKGROUND

The Court assumes the following to be true for purposes of the Motion to Amend. The Court derives this narrative from Villalobos's complaint (ECF No. 47) and Vision's proposed amended complaint (ECF No. 59-1).

---

[2] Cypress LHS "[a]lternatively" argues that Vision's proposed amended Claim 3 (breach of contract) should be permitted while leave to amend all other claims should be denied because this is Vision's "third attempt" to plead those claims. (*Id.* (emphasis in original).) The Court is not persuaded. When it comes to the number of times a party has attempted to plead a claim, the relevant question is, usually, whether the party "fail[ed] to cure deficiencies by amendments previously allowed." *Frank*, 3 F.3d at 1366. The Court has never previously noted a deficiency and allowed amendment.

4

Vision is a Wyoming corporation with its principal place of business in Denver. (ECF No. 59-1 at 1.) It sponsors, and is the designated administrator of, the Plan, which provides health benefits to Vision's employees and is governed by ERISA. (*Id.* at 2, 6.) Vision contracted with Cypress BA in May 2015 to help Vision administer the Plan. (*Id.* at 6–7.) Cypress BA helped to design the Plan, evaluated claims, paid approved claims, and communicated required information to Plan participants. (*Id.* at 7.)

In May 2016, Cypress BA created a new governing document for the Plan, which excluded medical coverage for injuries sustained in a motorcycle accident while not wearing a helmet, or in a car accident while not wearing a seatbelt ("Vehicle Accident Exclusion"). (*Id.* at 8.) This was a new exclusion. (*Id.*) Vision did not request it, Cypress BA did not call Vision's attention to it, and Cypress BA did not notify, or ensure that Vision notified, Vision's employees about the exclusion. (*Id.* at 8–9.)

Villalobos, a Vision employee and Plan participant, was in a motorcycle accident on July 23, 2016. (ECF No. 47 ¶ 11.) He sustained multiple severe injuries. (*Id.* ¶ 14.) Cypress BA rejected coverage for these injuries in light of the Vehicle Accident Exclusion. (*Id.* ¶ 24.) This was the first Villalobos had heard of that exclusion. (*Id.* ¶ 29.)

Villalobos sues Vision, the Plan, and Eagle for various breaches of ERISA. (*Id.* at 22–27.) His basic theory appears to be that ERISA forbids the Vehicle Accident Exclusion, or at least forbids its enforcement absent proper prior notice to Plan participants.

Vision has, in turn, sued Cypress BA and Cypress LHS (which acquired or

merged into Cypress BA in October 2016). (ECF No. 59-1 at 2–4.) Vision asserts four claims against the Cypress entities: breach of fiduciary duty under ERISA (Claim 1); common law negligence (Claim 2); breach of contract (Claim 3); and declaratory relief (Claim 4).

### III. ANALYSIS

Cypress LHS argues that it would be futile to allow Vision to plead its proposed Claims 1, 2, and 4. The Court will address each claim in turn.

**A.     Claim 1: Breach of Fiduciary Duty—ERISA**

Claim 1 of Vision's proposed amended complaint invokes 29 U.S.C. § 1132(a)(2) and (3). (ECF No. 59-1 at 12, ¶ 73.) Section 1132(a)(2) permits a plan fiduciary to bring a civil action "for appropriate relief under section 1109." Section 1109, in turn, states that

> [a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . .

29 U.S.C. § 1109(a). As for § 1132(a)(3), it permits plan fiduciaries to bring a civil action "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan."

In sum, Vision's Claim 1 alleges breach of fiduciary duty under ERISA. Cypress LHS responds that such a claim is futile because it cannot be an ERISA fiduciary, or, alternatively, ERISA fiduciaries cannot sue each other for contribution or

6

indemnification. The Court will address each argument in sequence.

1. Fiduciary Status

Cypress LHS attaches to its response brief the "Claims Administration Agreement" between Vision and Cypress BA ("Agreement"). (ECF No. 62-1.)[3] Allegedly, Cypress LHS assumed the Agreement, including liabilities under it, when it acquired or merged into Cypress BA. (*See* ECF No. 59-1 at 2–4, 6, 9.) Cypress LHS points out that the Agreement states that Vision "retains the final authority and responsibility for the Plan and its operation," and that Cypress BA has authority to act on Vision's behalf "only as expressly stated in writing by [Vision]." (ECF No. 62-1 § 4.1.) Cypress LHS also points to Agreement language setting forth, supposedly with no room for discretion, the procedures by which it is to carry out its responsibilities. (*Id.* §§ 5.1, 5.6, 5.9, 6.1–6.3.) Cypress LHS then cites eleven cases in which courts have found that an alleged ERISA fiduciary was not, on the facts presented, a fiduciary. (ECF No. 62 at 4–5.)

Cypress LHS's assemblage of case law shows that a party's fiduciary status is potentially resolvable by reference solely to a contract governing that party's duties. However, Vision's proposed amended complaint alleges that the Cypress entities "functioned as a fiduciary, irrespective of any title or contractual provision," because they essentially carried out all material functions under the Plan. (ECF No. 59-1 at 11; *see also id.* at 7.) Cypress LHS does not argue that these allegations are implausible and may be disregarded. Accordingly, at this pleading phase, Vision's proposed amended Claim 1 does not fail to plausibly allege fiduciary status, and therefore is not

---

[3] Vision does not object to Cypress LHS attaching and referencing this document.

7

futile on that account. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan, *see* 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties . . . .").

2. Claims Between Co-Fiduciaries

Cypress LHS next argues that, assuming it is an ERISA fiduciary, there does not exist a federal common law right to indemnification or contribution between ERISA co-fiduciaries. The circuits are split on this matter, as are district courts in circuits, including the Tenth Circuit, where the appeals court has not weighed in. *See Pioneer Centres Holding Co. Employee Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 2015 WL 2018973, at *2 (D. Colo. May 1, 2015) (describing the split). The various cases appear to focus on whether one fiduciary can claim against another fiduciary, arguing that the other fiduciary is at least partly responsible for the breach alleged in the lawsuit. While that sounds similar to what Vision is trying to do here against Cypress LHS, there are aspects to Claim 1 that may fall outside that rubric.

As already noted, 29 U.S.C. §§ 1109(a) and 1132(a)(2) specifically permit a plan fiduciary to sue another plan fiduciary to recover losses to an ERISA plan caused by the other fiduciary's breach. The alleged losses to the Plan that Vision seeks to recover "includ[e] (but [are] not limited to) the cost and expense of defending the Villalobos Lawsuit, and (to the extent Vision or the Plan are held to be liable in the Villalobos Lawsuit) any payments required of the Plan as a result of [the Cypress entities'] breaches." (ECF No. 59-1 at 12.)

It is not clear how Vision's or the Plan's liability to Villalobos could be considered a "loss" to the Plan, given Villalobos's basic theory that the Plan has wrongfully denied

8

benefits. Or in other words, if the Plan wrongfully denied benefits, how could the act of righting that wrong be considered a "loss," as opposed to precisely the kind of payment the Plan is supposed to be making? But Villalobos also seeks his attorneys' fees under 29 U.S.C. § 1132(g) (*see* ECF No. 47 ¶¶ 68, 72, 78), and paying such fees is conceivably a "loss" to the Plan, depending on the source of the funds—or at least Cypress LHS does not argue otherwise. Similarly, Vision's request for the attorneys' fees it incurs litigating against Villalobos is also conceivably a loss to the plan.

In this light, the Court finds that Vision has adequately alleged at least a 29 U.S.C. § 1132(a)(2) cause of action. Whether Vision's claim should be characterized as a federal common law right of indemnification or contribution—and, if so, whether such a theory of relief exists—is better addressed on a fuller factual record that clarifies what, precisely, Vision seeks to recover from Cypress LHS on the Plan's behalf.[4]

For all these reasons, the Court will grant Vision's Motion to Amend as to its proposed amended Claim 1.

**B.     Claim 2: Negligence**

Vision's currently operative Claim 2 and its proposed amended Claim 2 allege

---

[4] If Vision is actually recovering on behalf of the Plan, there is an interesting question whether any of Vision's theories are appropriately deemed third-party claims, *i.e.*, claims against "a nonparty who is or may be liable to [the third-party plaintiff] for all or part of the claim [by the original plaintiff] against [the third-party plaintiff]." Fed. R. Civ. P. 14(a)(1). The concern is the same for Vision's attorneys' fees incurred in litigating against Villalobos, whether or not those fees are considered losses to the Plan, because they are not part of Villalobos's claim against Vision. Vision's claims might be more appropriately deemed counterclaims against a non-plaintiff, as contemplated under Rule 13(h). However, Vision did not choose to be a third-party plaintiff. It originally brought an independent lawsuit against the Cypress entities, and it was this Court that consolidated the Villalobos lawsuit into this one and required Vision to be realigned as a third-party plaintiff vis-à-vis the Cypress entities, based on the Court's understanding at that time of what Vision sought from the Cypress entities. For now, the Court will maintain the current alignment. If realignment is necessary based on how the claims develop, the Court will address the matter at a later stage.

9

negligence, asserting that Vision was owed a duty of care from the Cypress entities, including a duty "to provide services of a nature involving professional skills, including legal services with respect to the Plan drafting, ERISA compliance, and compliance with all applicable insurance laws," which in turn created a duty "to provide services which would not cause Vision or the Plan [to suffer losses]." (ECF No. 59-1 at 12–13.)[5] Cypress LHS contends that this is basically a restatement of Vision's breach of contract claim (its proposed amended Claim 3, which Cypress LHS does not challenge), and so is barred by the economic loss rule. (ECF No. 62 at 7–8; *see also* ECF No 43-1 at 11 (advancing materially the same argument against the currently operative Claim 2).)

"[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Const., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000). "To survive a motion to dismiss based on the economic loss rule, [a party] merely has to allege sufficient facts, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (Colo. 2016).

Vision contends that it has met this standard because it has alleged what it believes to be an independent duty of care beyond the duties imposed by contract. (ECF No. 68 at 7–8.) It is true that Vision has alleged some sort of duty, but Vision overlooks that it must be "a *recognized* independent duty of care." *Town of Alma*, 10 P.3d at 1263 (emphasis added). Moreover, it is "a court's duty to determine, *at the outset of a lawsuit*, the type of duty that has allegedly been breached." *Id.* (emphasis

---

[5] The currently operative Claim 2 (ECF No. 15 ¶¶ 62–74) is less detailed than the proposed amended Claim 2, so the Court will only cite the proposed amended Claim 2.

added).  A court can undertake this inquiry at the pleading phase because "[t]he existence and scope of a tort duty is a question of law to be determined by the court." *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 866 (Colo. 2005); *see also Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1020–22 (10th Cir. 2018) (affirming district court's holding at the motion-to-dismiss phase that an independent duty did not exist under Colorado law, and therefore the economic loss doctrine applied).

Vision does not attempt to explain precisely what recognized independent duty Cypress LHS breached, or what independent duty this Court should predict that the Colorado Supreme Court would recognize.  Vision instead offers a cloud of possibilities, perhaps including the provision of legal services (although Vision does not say it is claiming legal malpractice), generally coalescing around a supposed duty to do all of the things Vision thinks Cypress LHS should have done to prevent Villalobos's lawsuit.  (ECF No. 59-1 at 12–14.)  Vision cannot say whether this is common or professional negligence, and repeatedly pleads that it might be either.  (*Id.*)

When the Colorado Supreme Court recognizes a tort duty, it does so in rather clear terms.  For example, it has declared that a builder has a "duty to use reasonable care in the construction of a home in light of the apparent risk," *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1043 (Colo. 1983), or that "the quasi-fiduciary nature of the insurance relationship" gives rise to an insurer's duty of care "when handling claims of third persons that are brought against the insured," *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1142 (Colo. 1984).  Vision, by contrast, offers nothing similar.

Vision's unfocused approach shows that Vision has no idea where the

independent duty falls among already-recognized duties, or how it should be defined if it is not already recognized. And, as to the latter possibility, Vision fails to explain why this Court should predict that the Colorado Supreme Court would recognize the duty. *Cf. A.C. Excavating*, 114 P.3d at 866 ("The determination that [an independent tort] duty does or does not exist is an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is or is not entitled to protection." (internal quotation marks omitted; alterations incorporated)).

For all these reasons, the Court agrees with Cypress LHS that permitting Vision to plead its proposed amended Claim 2 would be futile in light of the economic loss rule. Vision's Motion to Amend will be denied as to that claim. Moreover, the currently operative Claim 2 fails for the same reasons, so Cypress LHS's Motion to Dismiss will be granted as to Claim 2. However, the Court is not convinced that Vision could never plead a viable negligence claim, so the Court will *sua sponte* grant Vision leave to include, within the amended complaint that the Court will otherwise authorize by this order, a re-pleaded negligence claim.

**C.     Claim 4: Declaratory Judgment**

Vision seeks declaratory relief that the Cypress entities are "obligated to, and must, indemnify and hold harmless Vision with respect to the claims and lawsuit brought by Mr. Villalobos, and in connection with other losses suffered by Vision as a result of [the Cypress entities'] wrongful acts and omissions." (ECF No. 59-1 at 17–18.) Cypress LHS contends that such declaratory relief "is not proper here" because the Court's resolution of the breach-of-contract claim will necessarily determine the rights and duties that Vision otherwise seeks to have declared. (ECF No. 62 at 9, 10.) Vision responds that its breach of contract claim is backward-looking while the question of

"whether Cypress LHS should be responsible for any possible *future* damages awarded to Mr. Villalobos by virtue of his separate claims against Vision" is forward-looking, and is therefore appropriate for declaratory judgment. (ECF No. 68 at 10 (emphasis in original).)

It is frankly difficult to envision a resolution of the breach of contract claim that does not have a direct correlation to Cypress LHS's potential duty to indemnify Vision should Villalobos prevail. On the other hand, this case remains in its relatively early phases and the Court cannot say that declaratory relief could never offer anything beyond the answers that will be provided when the other claims for relief are resolved.

The Court acknowledges Cypress LHS's citation to *TBL Collectibles, Inc. v. Owners Insurance Co.*, 285 F. Supp. 3d 1170, 1194–97 (D. Colo. 2018), where Chief Judge Philip A. Brimmer dismissed a declaratory judgment claim that sought no more relief than what the plaintiff might obtain under its substantive cause of action. However, Chief Judge Brimmer was resolving a summary judgment motion, not a motion to dismiss or amend. Under the circumstances, the Court finds it premature to determine whether Vision's declaratory judgment claim is entirely subsumed by its other claims. The Court will therefore grant the Motion to Amend as to this claim.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Vision's Motion for Leave to File Amended Third-Party Complaint (ECF No. 59) is GRANTED as to its proposed Claims 1, 3, and 4, but DENIED WITHOUT PREJUDICE as to its proposed Claim 2;

13

2. Cypress LHS's Motion to Dismiss the Amended Complaint (ECF No. 43) is DENIED AS MOOT with respect to Cypress LHS's Rule 12(b)(1) arguments and its Rule 12(b)(6) arguments against Claims 1, 3, and 4 of Vision's Amended Complaint (ECF No. 15), but GRANTED as to Claim 2 of Vision's Amended Complaint; and

3. Vision is GRANTED LEAVE, on or before **March 29, 2019**, to file an amended complaint embodying its proposed Claims 1, 3, and 4, and including a negligence claim (presumably as Claim 2) that cures the defects noted above.

Dated this 8th day of March, 2019.

BY THE COURT:

_____
William J. Martinez
United States District Judge